1   SARA M. THORPE (SBN: 146529)
    sthorpe@nicolaidesllp.com
2   GARY A. BARRERA (SBN: 244073)
    gbarrera@nicolaidesllp.com
3   NICOLAIDES FINK THORPE
    MICHAELIDES SULLIVAN LLP
4   505 Montgomery Street, Suite 600
5   San Francisco, CA 94111
    Telephone:   (415) 745-3770
6   Facsimile:   (415) 745-3771
7
    Attorneys for Defendant and Counterclaimant
8   NATIONAL UNION FIRE INSURANCE COMPANY
    OF PITTSBURGH, PA
9

10              **UNITED STATES DISTRICT COURT**

11   **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

12   KELLY-MOORE PAINT COMPANY, INC.,        Case No. 3:14-CV-01797-MEJ

13                 Plaintiff,               **NATIONAL UNION FIRE INSURANCE
                                            COMPANY OF PITTSBURGH, PA'S
14   v.                                     REVISED COUNTERCLAIM FOR
                                            DECLARATORY RELIEF, BREACH OF
15   NATIONAL UNION FIRE INSURANCE          CONTRACT, BREACH OF GOOD FAITH
     COMPANY OF PITTSBURGH, PA, DOES        AND FAIR DEALING, FRAUD
16   1 through 10,                          (CONCEALMENT), AND REFORMATION
                                            AGAINST KELLY-MOORE PAINT
17                 Defendants.              COMPANY, INC.**

18   _____

19   NATIONAL UNION FIRE INSURANCE          Complaint Filed March 20, 2014
     COMPANY OF PITTSBURGH, PA,
20
     Counterclaimant,
21
     v.
22
     KELLY-MOORE PAINT COMPANY, INC.,
23
                 Counter-defendant.
24

25

26

27

28

# NATURE OF THE ACTION[1]

1.     Plaintiff and Counter-defendant KELLY-MOORE PAINT COMPANY, INC. ("Kelly-Moore") instituted this lawsuit against Defendant and Counterclaimant NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("National Union").

2.     Kelly-Moore seeks defense and indemnity from National Union for claims alleging bodily injury from exposure to asbestos-containing products manufactured by Kelly-Moore and/or its subsidiaries (the "Asbestos Claims").  Kelly-Moore says it tendered 12 of the Asbestos Claims to National Union.  National Union agreed to defend Kelly-Moore under a reservation of rights.  National Union has the right under its policies and the law to defend, investigate, and settle the Asbestos Claims. However, Kelly-Moore has refused to cooperate with National Union and has refused to provide information to National Union, including about the 12 specific Asbestos Claims for which Kelly-Moore seeks coverage.  Kelly-Moore has and continues to incur defense costs for and enter into settlements of Asbestos Claims without the consent of National Union.

3.     In addition, upon information and belief, Kelly-Moore had other liability policies that provided coverage for the Asbestos Claims. Kelly-Moore failed to provide notice to National Union about the Asbestos Claims for many years during which time Kelly-Moore exhausted the limits of and/or settled with its other insurance so that National Union may have no other insurance policies from which it can seek contribution or subrogation.

4.     Kelly-Moore's failure to allow National Union to control the defense of the Asbestos Claims, failure to cooperate, and failure to provide prompt and reasonable notice of claims, is in breach of the insurance policies and has prejudiced National Union.  Kelly-Moore's voluntary assumption of obligations and expenses is also in

---

[1] This Counterclaim is revised consistent with the Court's Order of Oct. 17, 2014 (Docket #36).

NATIONAL UNION'S REVISED COUNTERCLAIM FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, FRAUD, AND REFORMATION

1

breach of the insurance policies. Kelly-Moore's conduct is also in breach of Kelly-Moore's duties of good faith and fair dealing, which each party to the contract owes to the other. Kelly-Moore's conduct excuses obligations National Union might otherwise have under its policies, and entitles National Union to damages.

5. National Union seeks a judicial determination of the parties' respective rights, duties, and obligations under the National Union policies and the law, a determination that Kelly-Moore has breached its express and implied contractual obligations, that Kelly-Moore's scheme is insurance fraud, and reformation of the policies if there is a dispute as to the scope of the policies' coverage.

## PARTIES

6. National Union is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in the State of New York. At all times material hereto, National Union was authorized to do business in the State of California.

7. National Union is informed and believes that Kelly-Moore is a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California.

## JURISDICTION AND VENUE

8. National Union's Counterclaim arises out of the same or similar transactions and occurrences which gave rise to, and which are described in, Kelly-Moore's Complaint. This Court has jurisdiction over this Counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure. This Court also has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Counter-defendant Kelly-Moore is domiciled in this district.

/ / /

/ / /

## FACTS

**National Union Policies**

| Policy No. | Policy Period |
|---|---|
| RMGLTX 460-0059 | 10/01/89-10/01/90 |
| RMGLTX 249-8717 | 10/01/90-10/01/91 |
| RMGL 325-8295 | 10/01/91-10/01/92 |
| RMGL 326-5219 | 10/01/92-10/01/93 |
| RMGL 175-9890 | 10/01/93-10/01/94 |
| RMGL 319-9129 | 10/01/94-10/01/95 |

10.     National Union issued six liability policies of insurance to Kelly-Moore for the period of October 1, 1989 through October 1, 1995 (the "National Union Policies").

11.     Upon information and belief and as an accommodation to Kelly-Moore, the National Union policies were part of an insurance program.  The program consisted of two companion policies for each policy period – one issued for all states except Texas, which policies contained asbestos exclusions, and the other issued for Texas, that did not include asbestos exclusions and were intended to cover Texas claims only.

12.     Each of the National Union Policies has limits of liability for bodily injury of $1 million per occurrence and $2 million in the aggregate.

13.     Each of the National Union Policies contains the following or similar language that requires National Union to defend Kelly-Moore against claims for bodily injury covered by the policy, and gives National Union the right to defend, investigate, and settle those claims:

> **SECTION I – COVERAGES**
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **a.     Insuring Agreement.**
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.   We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. This insurance applies only to 'bodily injury' and 'property damage' which occurs during the policy period.  The 'bodily injury' or 'property damage' must be caused by an

‘occurrence.’  The ‘occurrence’ must take place in the ‘coverage territory.’ . . .”

* * *

14.     Each of the National Union Policies contains the following or similar language in the Conditions section of the policy that requires Kelly-Moore to provide notice of occurrences, claims, and suits, and to cooperate with its insurer, and to not voluntarily make payments, assume obligations, or incur expenses without the insurer's consent:

**2.      Duties In The Event Of Occurrence, Claim or Suit.**

**a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

**(1)**   How, when and where the "occurrence" or offense took place,

**(2)**   The names and addresses of any injured person and witnesses, and

**(3)**   The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**     If a claim is made or "suit" is brought against any insured, you must:

**(1)**   Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**   Notify us as soon as practicable.

* * *

**c.**     You and any other involved insured must: . . .

**(3)**   Cooperate with us in the investigation, settlement or defense of the claim or "suit", and

**(4)**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**     No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

15.     The National Union policies provide under their "Other Insurance" provision that if there is other valid and collectible insurance, National Union will share with those insurers in payment of defense and indemnity.

/ / /

NATIONAL UNION'S REVISED COUNTERCLAIM FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, FRAUD, AND REFORMATION

4

16. Further, the National Union policies have "Transfer of Rights of Recovery Against Others To Us" provisions that require that Plaintiff do nothing to impair the right to recover against others.

17. The National Union Policies were intended to apply to Texas claims only. This is apparent from at least (but not limited to) the following:

- The "TX" designation in the numbers on many of the policies;
- The Texas premium audit reports;
- The Texas specific endorsements in the policies including for cancellation and nonrenewal, and conditions requiring notice;
- The umbrella policies' reference to underlying "Texas-only" policies;
- Kelly-Moore's "tailored" claims services agreements which refer to the "Texas only" and "all other states" policies;
- The KM Insurance Company reinsurance agreement's reference to the two policies;
- Correspondence between Secretary-Treasurer of Kelly-Moore, John Bacigalupo, and Kelly-Moore's brokers, and with National Union referring to the "Texas" policies and policies for "AO" or "AOS" (all other states);
- Payment of claims under the Texas policies for Texas accidents, and payment of other states' claims under the "AO" policies.

18. Each of the National Union policies in the program was included in a Facultative Reinsurance Agreement with a captive insurance company owned by Kelly-Moore known as "K-M Insurance Company" (the "Reinsurance Agreement"). Upon information and belief, Kelly-Moore honors and guarantees performance of K-M Insurance Company under the Reinsurance Agreements. Pursuant to the Reinsurance Agreements, each of the National Union Policies is reinsured for the first $500,000 paid per occurrence (in the 10/01/89-10/01/90, 10/01/90-10/01/91, and 10/01/91-10/01/92 policies), and for the first $750,000 paid per occurrence (in the 10/01/92-10/01/93, 10/01/93-10/01/94 and 10/01/94-10/01/95 policies). In addition, under the

Reinsurance Agreements, defense costs paid by National Union are reinsured according to a specific formula. In addition, the Reinsurance Agreements provide for the payment of a claims handling service and a claims supervision fee. In this way, upon information and belief, any amounts for Asbestos Claims paid by National Union would be reimbursed by Kelly-Moore.

**Other Insurance**

19. Upon information and belief, Kelly-Moore had other liability insurance that provided from perhaps 1956 until 1984 coverage for Kelly-Moore's Asbestos Claims.

20. Upon information and belief, Kelly-Moore either exhausted the limits of those policies or settled with those insurers so those policies are no longer available to contribute towards defense or indemnity of the Asbestos Claims.

21. Upon information and belief, Kelly-Moore not only did not tender any claims to National Union that it tendered to those other insurers, but Kelly-Moore did not tell those insurers (and concealed from those other insurers) that there were National Union policies that provided coverage for the Asbestos Claims. Upon information and belief, if other insurers had known about the National Union Policies, those other insurers would have requested contribution from National Union towards defense and indemnity of the Asbestos Claims. National Union did not receive notice from any other insurer about Kelly-Moore's Asbestos Claims.

22. Upon information and belief, Kelly-Moore agreed to advise its other primary insurers that if it knew about other insurance, it would advise its other insurers so that there would be more insurers to contribute to the payment of defense and indemnity of the Asbestos Claims, but Kelly-Moore did not so advise its other insurers.

23. Kelly-Moore has for some time has been voluntarily paying from its own resources (other than insurance) to defend and resolve the Asbestos Claims.

**The Dispute**

24. On March 20, 2014, Kelly-Moore filed its Complaint in this action seeking a declaration of rights and seeking damages for breach of contract and breach of the

covenant of good faith and fair dealing.  Kelly-Moore's Complaint alleges National Union provided general liability coverage to Kelly-Moore under six policies for the period of October 1, 1989 to October 1, 1995.  The Complaint alleges Kelly-Moore has been named as a defendant in thousands of Asbestos Claims.  The Complaint alleges Kelly-Moore tendered 12 Asbestos Claims to National Union on July 3, 2013, and retendered those claims on October 29, 2013, and National Union did not respond to these tenders.

25.     Kelly-Moore alleges that in addition to the 12 claims tendered, National Union has a duty to defend and indemnify Kelly-Moore against other Asbestos Claims that fall within the coverage of one or more of the National Union policies.

26.     Kelly-Moore seeks in this lawsuit a determination of the parties' rights and obligations under the National Union policies for the 12 claims tendered as well as other Asbestos Claims.

27.     Upon information and belief, Kelly-Moore asserts it has a right to select which policy or policies it wants to have pay a claim and can choose to only request payment and not defense of the Asbestos Claims, all in reliance on *Armstrong World Ind. v. Aetna Cas. & Sur. Co.,* 45 Cal.App.4th 1 (1996).

28.     On April 18, 2014, National Union (in response to service of the Complaint to which were attached the tenders), National Union agreed to defend Kelly-Moore pursuant to a reservation of rights.  National Union advised Kelly-Moore that National Union did not have the July 3, 2013 tender and had no record of any October 29, 2013 follow-up letter.  National Union advised that it would continue to investigate the claims tendered by Kelly-Moore and requested information and documentation in order to determine what amounts it should pay.

29.     Kelly-Moore did not at any time request from National Union authority to settle the 12 Asbestos Claims, or any other Asbestos Claims.

30.     Kelly-Moore has not tendered any Asbestos Claims other than the 12 it says it tendered in July 2013.

NATIONAL UNION'S REVISED COUNTERCLAIM FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, FRAUD, AND REFORMATION

7

31.     National Union requested that it be provided information in order to defend, investigate and settle the Asbestos Claims. Kelly-Moore failed to provide information, has not allowed National Union to contact defense counsel, and has taken the position that National Union is not permitted to control the defense or settlement of the Asbestos Claims even though Kelly-Moore contends the National Union Policies cover those claims.

32.     On May 19, 2014, Kelly-Moore made a proposal to National Union regarding the 12 tendered claims and future Asbestos Claims. Kelly-Moore proposed that for claims settled between July 3, 2013 to April 18, 2013, Kelly-Moore would choose the policy or policies under which it would submit the claim and National Union would pay the settlement and defense pursuant to the Reinsurance Agreements. Of the six settlements submitted for payment, two were among the 12 tendered claims. The other four had not been previously tendered. The claims are not Texas claims.

33.     One of the settlements in Kelly-Moore's proposal was a California claim in the amount of $2,250,000 (the "Depree Claim"). Under Kelly-Moore's proposal, Kelly-Moore "selected" National Union policies to pay the Depree Claim such that National Union's share exceeded the $500,000 (or $750,000) per occurrence limit in the National Union Policies. Even if the insured has the right in certain circumstances (not present here) to select a policy under which it tenders a claim, the insurer has the right under *Armstrong, supra,* 45 Cal.App.4th at 50-51, to seek contribution from other insurers. Through contribution among 20 or more years of insurance coverage, even a settlement of over $2 million would mean that each insurer triggered by the claim would likely pay much less than $500,000 towards that claim.

34.     As to Asbestos Claims not settled, Kelly-Moore proposed that it (and not National Union) would unilaterally defend the claims, settle or try the claims, and then determine whether to submit the settlement or judgment under one or more of the National Union Policies, without regard to whether the claim is a Texas claim. Kelly-Moore further proposed that National Union's only obligation under the insurance

contracts was to set up a monetary fund to pay the settlements and judgments, as if the National Union Policies were an "ATM." Kelly-Moore proposed that it could obtain from that ATM fund National Union's "share" of what it should pay under the National Union policy or policies selected by Kelly-Moore.

35.     In these ways and through the decades-long way in which Kelly-Moore orchestrated the handling of its Asbestos Claims, Kelly-Moore seeks to avoid National Union exercising its rights to control the defense, investigation, and settlement of Asbestos Claims, foreclose National Union's ability to share in the costs of Asbestos Claims with Kelly-Moore's other insurers, and require National Union to pay for more than only Texas claims.

36.     Kelly-Moore demanded that National Union pay the Depree claim referenced in the prior paragraph, and another California claim, the "Marquardt" Claim, which were among the 12 claims Kelly-Moore says it tendered in July 2013. The Depree and Marquardt Claims involve California residents who were exposed to asbestos while working in California.

37.     In addition, Kelly-Moore demanded that National Union pay four other claims that had not been tendered (the "Boehm," "Chan," "O'Rourke," and "Turner" Claims). Those Claims, too, are not Texas claims. The claimants are residents of states other than Texas and allege exposure to asbestos from products while working in states other than Texas.

38.     On October 10, 2014, National Union paid $1.5 million to Kelly-Moore in connection with the Depree and Marquardt Claims under the policies designated by Kelly-Moore, pursuant to a complete reservation of rights including but not limited to that the claims are not Texas claims, and as to National Union's contribution rights. National Union has not paid any defense costs in connection with those two claims because documentation of the defense costs or their payment has not been provided by Kelly-Moore.

/ / /

39.     On or about October 15, 2014, National Union advised Kelly-Moore that National Union was denying coverage on the Boehm, Chan, O'Rourke, and Turner Claims including, but limited to, because of the National Union Policies' voluntary payment provision and because the claims are not Texas claims.

40.     Since April 2014, National Union has received notice from at least six insurers of Kelly-Moore that they were unaware of the National Union Policies and that their policies have been exhausted or settled, and therefore they do not have amounts to contribute to the Asbestos Claims.  Kelly-Moore has refused to provide copies of the settlement agreements or to inform National Union if Kelly-Moore agreed to defend and indemnify the settled insurers in the case of any contribution claim by another insurer.

## FIRST CAUSE OF ACTION
### (Declaratory Relief – Right to Control Defense, *Armstrong* Election)

41.     National Union re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40 of this Counterclaim as though fully set forth here.

42.     An actual controversy has arisen between National Union and Kelly-Moore with regard to their respective duties and obligations under the National Union Policies and applicable law.  Specifically, National Union contends that it has the right to control the defense and settlement of the Asbestos Claims because the National Union Policies provide that National Union has the right and duty to defend and the right to investigate and settle claims.

43.     Upon information and belief, Kelly-Moore disputes that National Union has these rights.

44.     Further, upon information and belief, Kelly-Moore contends that it has the right to select the National Union policy or policies under which Kelly-Moore seeks coverage and can tender a request for indemnification and not a request for defense, purportedly in reliance on *Armstrong, supra,* 45 Cal.App.4th at 50-51, and treat the National Union Policies like an ATM.

/ / /

45.     National Union disputes that Kelly-Moore has the right to select a policy and to demand payment, because that is contrary to the Policies' terms and conditions, and particularly where upon information and belief, Kelly-Moore had many years of insurance coverage and adversely impacted National Union's right to contribution from those other insurers.

46.     National Union desires a judicial determination of the respective rights and duties of the parties including a declaration that National Union has the right to control the defense and settlement of the Asbestos Claims, and a declaration that Kelly-Moore does not have the right to select the policy to which it tenders nor the right to tender only for payment.

47.     Such judicial determination and declaration is necessary and proper in order that the parties are bound by the same interpretation of the National Union Policies and applicable law.

**SECOND CAUSE OF ACTION**
**(Declaratory Relief – Duty to Cooperate, Notice, Voluntary Payments,**
**Other Insurance, Subrogation Rights)**

48.     National Union re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 47 of this Counterclaim as though fully set forth here.

49.     An actual controversy has arisen between National Union and Kelly-Moore with regard to the parties' respective duties and obligations under the National Union Policies and applicable law, including (but not necessarily limited to) that:

- Kelly-Moore's refusal to provide National Union with information regarding the Asbestos Claims, including the 12 Asbestos Claims Kelly-Moore says it tendered, in violation of the National Union Policies' cooperation clause;

- Kelly-Moore's failure to provide prompt and reasonable notice of the Asbestos Claims over many years, including the recently tendered 12 Asbestos Claims and lack of notice of any other current Asbestos Claims, in violation of the National Union Policies' notice provisions;

- Kelly-Moore's voluntary payment, assumption of liabilities, and incurring of expenses in connection with the Asbestos Claims, including the 12 Asbestos Claims, in violation of the National Union Policies' voluntary payments provision; and

- Kelly-Moore's exhaustion and settlement with its other insurers without, upon information and belief, providing notice to National Union about the Asbestos Claims or those insurers about the National Union Policies, in violation (among other things) of the National Union Policies' other insurance provisions.

50. Upon information and belief, Kelly-Moore disputes that it owes these duties under the policies and/or that it violated these duties.

51. National Union desires a judicial determination of the respective rights and duties of the parties and a declaration that:

- Kelly-Moore's refusal to provide National Union with information regarding the Asbestos Claims violates the duty to cooperate under the National Union Policies;

- Kelly-Moore's failure to provide prompt and reasonable notice of the Asbestos Claims is a violation of the notice provisions of the National Union Policies;

- Kelly-Moore's voluntarily payments, assumption of liabilities, and incurring of expenses is in violation of the voluntary payments provision of the National Union Policies; and

- Kelly-Moore's exhaustion and settlement of its other insurance policies is in violation of the other insurance provisions of the National Union Policies and the law.

52. Such judicial determination and declarations are necessary and proper in order that the parties are bound by the same interpretation of the National Union Policies and applicable law.

NATIONAL UNION'S REVISED COUNTERCLAIM FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, FRAUD, AND REFORMATION

12

### THIRD CAUSE OF ACTION
### (Declaratory Relief – Texas Only Claims)

53.     National Union incorporates by reference the allegations set forth in paragraphs 1 through 52 of this Counterclaim as though fully set forth here.

54.     The National Union Policies were issued to apply to Texas claims only as is evident from the insurance program and the parties' communications, including but not limited to as set forth in paragraph 17, *supra*.

55.     Upon information and belief and based on Kelly-Moore's tender and communications, Kelly-Moore is disputing this and demanding payment of claims that are not Texas claims.

56.     National Union desires a judicial determination of the respective rights and duties of the parties and a declaration that the National Union Policies apply only to Texas claims.

### FOURTH CAUSE OF ACTION
### (Breach of Contract)

57.     National Union incorporates by reference the allegations set forth in paragraphs 1 through 56 of this Counterclaim as though fully set forth here.

58.     Under the terms of the National Union Policies, National Union has the right to control the defense of Asbestos Claims and the right to investigate and settle those claims.  Under the terms of the National Union Policies, Kelly-Moore has an obligation to cooperate with National Union and to provide prompt and reasonable notice of claims.  Furthermore, under the terms of the National Union Policies, Kelly-Moore is required to not voluntarily make payments, assume liabilities, or incur expenses without National Union's consent.

59.     National Union has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the National Union Policies.

/ / /

NATIONAL UNION'S REVISED COUNTERCLAIM FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, FRAUD, AND REFORMATION

13

60.     Kelly-Moore has breached the National Union Policies in at least the following ways:

- Refusing to permit National Union to control the defense of the Asbestos Claims, including to investigate and settle those claims;

- Failing to provide National Union with prompt and reasonable notice of the Asbestos Claims;

- Paying settlements without National Union's consent;

- Assuming liabilities without National Union's consent; and

- Incurring expenses without National Union's consent.

61.     To the extent National Union must demonstrate that it has been prejudiced by Kelly-Moore's breach, National Union will do so, according to proof at trial.

62.     As a result of Kelly-Moore's breach of the terms and conditions in the National Union Policies, National Union is excused from performing obligations it might otherwise have owed under the policies.

63.     National Union seeks an order dismissing Kelly-Moore's claims for coverage and for breach of contract based on Kelly-Moore's breach of its contractual obligations.

**FIFTH CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing)**

64.     National Union incorporates by reference the allegations set forth in paragraphs 1 through 63 of this Counterclaim as though fully set forth here.

65.     Implied in each insurance contract between National Union and Kelly-Moore is the duty of good faith and fair dealing, which is a two-way street. The duty is owed by each party to the other.

66.     National Union has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the National Union Policies, and has acted in good faith and dealt fairly with its insured.

67. Kelly-Moore has breached the covenant of good faith and fair dealing in at least the following ways:

- Refusing to permit National Union to control the defense of the Asbestos Claims, including to investigate and settle those claims;

- Attempting to "select" a certain National Union Policy or Policies or seeking to limit what is tendered to be only a request for payment, with no right to investigate, defend, or settle;

- Failing to provide National Union with prompt and reasonable notice of the Asbestos Claims;

- Paying settlements without National Union's consent;

- Assuming liabilities without National Union's consent;

- Incurring expenses without National Union's consent;

- Demanding payment of claims that are not Texas claims, when Kelly-Moore knows the National Union Policies were issued to cover Texas claims only;

- Not providing prompt and reasonable notice to National Union of the Asbestos Claims over the years that Kelly-Moore tendered those claims to other insurers and, upon information and belief, not telling the other insurers about the National Union Policies; and

- Exhausting and/or settling with its other insurers, so that, upon information and belief, there are no other insurers to contribute along with National Union in the defense and payment of the Asbestos Claims.

68. As a result of Kelly-Moore's breach of the covenant of good faith and fair dealing, National Union is entitled to an order dismissing Kelly-Moore's claims for coverage based on Kelly-Moore's breach of the covenant of good faith and fair dealing and an award of all costs, fees and expenses incurred by National Union.

/ / /

/ / /

NATIONAL UNION'S REVISED COUNTERCLAIM FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, FRAUD, AND REFORMATION

15

## SIXTH CAUSE OF ACTION
### (Concealment-Fraud)

69.     National Union incorporates by reference the allegations set forth in paragraphs 1 through 68 as though fully set forth here.

70.     As an insured under the National Union Policies, Kelly-Moore has a duty to provide National Union with prompt and reasonable notice of all known claims and cooperate with National Union in National Union's investigation, settlement or defense of claims.

71.     Kelly-Moore had other liability insurance that provided many years of coverage for the Asbestos Claims.

72.     National Union alleges, upon information and belief, that Kelly-Moore has been involved for decades with Asbestos Claims.  National Union further alleges, upon information and belief, that Kelly-Moore provided notice of the Asbestos Claims to all of its other insurers except National Union and exhausted those policies or settled prior to disclosing the existence of the Asbestos Claims to National Union.  National Union further alleges, upon information and belief, that Kelly-Moore intentionally concealed the existence of the Asbestos Claims from National Union and the existence of the National Union Policies from the other insurers for decades in order to preserve the limits of coverage under the National Union Policies because of the unlikelihood that such claims would exceed the $500,000 or $750,000 reinsured threshold of the National Union Policies.

73.     Kelly-Moore concealed information that was material and which Kelly-Moore had and could have provided, all to the detriment of National Union.  That concealment included, but is not limited to the following:

- From 1989 to 1994, Kelly-Moore had insurance policies that required Kelly-Moore to provide notice of an occurrence, claim or suit covered by the National Union policies, but even though Kelly-Moore claims Asbestos Claims are covered by the National Union Policies, Kelly-Moore

did not provide notice of the claims until July 2013;

- Since 1989, Kelly-Moore's insurers including but not necessarily limited to Truck, Liberty, INA, and Zurich, shared in defending and resolving Kelly-Moore's Asbestos Claims, and Kelly-Moore agreed to tell those insurers about other insurance, but Kelly-Moore failed to do that;

- Kelly-Moore has not provided any documentation that it told any insurer that there were National Union Policies that provided coverage for claims involving exposure to asbestos;

- Kelly-Moore's other insurers have indicated they would have been interested in knowing about the six National Union Policies as those insurers would have sought to have National Union contribute to defense and resolution of Asbestos Claims;

- Even after Kelly-Moore used up all of its insurance, Kelly-Moore did not tender Asbestos Claims to National Union, choosing instead to handle those claims on its own; and

- At no time from 1989 until July 2013, did Kelly-Moore tender any Asbestos Claims to National Union.

74.     National Union alleges, upon information and belief, that Kelly-Moore did not provide notice of Asbestos Claims to National Union until after Kelly-Moore had exhausted all other insurance or settled with the other insurers, so that other insurance policies are no longer available to contribute towards the defense or indemnity of the Asbestos Claims.

75.     As a result of Kelly-Moore's concealment of Asbestos Claims for decades, National Union has been harmed because Kelly-Moore has represented that it did exhaust all of its other insurance.  National Union has paid $1.5 million to resolve two claims in response to Kelly-Moore's demands but will not be able to obtain contribution for those payments or payment of any other Asbestos Claims because its contribution rights against other insurers have been foreclosed by Kelly-Moore.  Kelly-

Moore's concealment of prior claims for decades from National Union is a substantial factor in causing National Union harm.

76.     Further, Kelly-Moore is misrepresenting the coverage it purchased from National Union in now demanding coverage for claims that are not Texas claims, even though Kelly-Moore knows the National Union Policies were to cover Texas claims only. Kelly-Moore is well-aware that the National Union Policies only cover occurrences in Texas, including as reflected in the following:

- The "TX" designation in the numbers on many of the policies;
- The Texas premium audit reports that reflect discounts Kelly-Moore received in connection with the Texas only policies;
- The Texas specific endorsements in the policies, including for cancellation and nonrenewal, and conditions requiring notice;
- The umbrella policies' reference to underlying "Texas-only" policies;
- Kelly-Moore's "tailored" claims services agreements which referred to the "Texas only" and "all other states" policies;
- The KM Insurance Company reinsurance agreements that reference the two policies for Texas and all other states;
- Correspondence between Secretary-Treasurer of Kelly-Moore, John Bacigalupo, and Kelly-Moore's brokers, and with National Union referring to the "Texas" policies and policies for "AO" or "AOS" (all other states);
- Payment of claims under the Texas policies for Texas accidents, and payment of other states' claims under the "AO" policies.

77.     National Union seeks damages, subject to proof, for the full amount of its indemnity payments to Kelly-Moore which otherwise would have been reduced through contribution from other insurers or reinsurance, and for all the fees, costs and expenses National Union incurs in connection with processing and collection of such overpayments, all according to proof, and for damages associated with payment of claims that are not Texas claims.

## SEVENTH CAUSE OF ACTION
### (Reformation)

78. National Union incorporates by reference the allegations set forth in paragraphs 1 through 68 as though fully set forth here.

79. Provisions in the National Union Policies, communications in connection with preparation of the policies, and payment of claims under the policies, among other evidence, indicate without question that the National Union Policies under which Kelly-Moore now seeks coverage were intended to only cover occurrences in Texas. The evidence of this intent is in, but not limited to, the following:

- The "TX" designation in the numbers on many of the policies;
- The Texas premium audit report;
- The Texas specific endorsements in the policies including for cancellation and nonrenewal, and conditions requiring notice;
- The umbrella policies' reference to underlying "Texas-only" policies;
- Kelly-Moore's "tailored" claims services agreements which refer to the "Texas only" and "all other states" policies;
- The KM Insurance Company reinsurance agreements that reference the two policies for Texas and all other states;
- Correspondence between Secretary-Treasurer of Kelly-Moore, John Bacigalupo, and Kelly-Moore's brokers, and with National Union referring to the "Texas" policies and policies for "AO" or "AOS" (all other states); and
- Payment of claims under the Texas policies for Texas accidents, and payment of other states' claims under the "AO" policies.

80. Until National Union received notice from Kelly-Moore in or after April 2014 that Kelly-Moore made demands for payment under the National Union Policies for claims that do not involve occurrences that happened in Texas, National Union was unaware that Kelly-Moore was taking the position that the National Union Policies

apply to claims outside of Texas.  National Union timely brought this claim for reformation.

81.     To the extent there is any contention now by Kelly-Moore that the National Union Policies are unclear or do not set forth that the National Union Policies apply only to Texas claims, there was a mutual mistake or a mistake of one party which the other at the time knew or suspected, such that the written contracts do not truly express the intention of the parties.

82.     National Unions seeks an order from this Court reformatting the National Union Policies to set forth that these six policies apply to Texas claims only.  National Union seeks reformation of the National Union Policies to provide that Paragraph 4 under Section V – Definitions is deleted and replaced by the following: "4. 'Coverage territory' means Texas."

## EIGHTH CAUSE OF ACTION
### (Contribution / Indemnity / Subrogation)

83.     National Union incorporates by reference the allegations set forth in paragraphs 1 through 73 as though fully set forth here.

84.     Upon information and belief, Kelly-Moore exhausted and/or settled with its other insurers, primary and excess, and agreed to indemnify insurers from contribution claims, and to the extent it did so, Kelly-Moore stands in the shoes of the other insurers.

85.     To the extent National Union pays any amounts for Kelly-Moore's Asbestos Claims which amounts should have been paid or contributed to by other insurers, National Union is entitled to contribution, indemnity, subrogation, set off, or credit for amounts those other insurers should have paid towards the amounts in indemnity and defense that National Union pays.

86.     National Union seeks an order requiring Kelly-Moore to pay for or to set off or credit any amounts it seeks to recover from National Union with amounts that should have been paid by other insurers.

# **PRAYER FOR RELIEF**

WHEREFORE, National Union prays for entry of judgment and relief as follows:

1. A declaration and order that National Union has the right to control the defense and settlement of the Asbestos Claims;

2. A declaration and order that Kelly-Moore breached the cooperation clause in the National Union Policies;

3. A declaration and order that Kelly-Moore breached the notice provisions of the National Union Policies;

4. A declaration and order that Kelly-Moore breached the voluntary payments provision of the National Union Policies;

5. A declaration and order that the National Union Policies apply only to Texas claims;

6. A determination that Kelly-Moore breached its duties under the National Union Policies and the law, which breach excuses National Union from performing duties it might otherwise owe under the National Union Policies, including the duty to defend and indemnify Kelly-Moore against the Asbestos Claims;

7. A determination that Kelly-Moore breached the implied covenant of good faith and fair dealing, which breach excuses National Union from performing duties it might otherwise owe under the National Union Policies, including the duty to defend and indemnify Kelly-Moore against the Asbestos Claims;

8. For damages, subject to proof, for the full amount of National Union's defense and indemnity overpayments to Kelly-Moore;

9. For reformation of the National Union Policies, if necessary, to reflect that real intentions and agreement of the parties that these policies apply only to Texas claims;

10. For an order requiring Kelly-Moore to pay for, set off or credit National Union for amounts other insurers should have paid;

11. For attorneys' fees as allowed by contract or law;

NATIONAL UNION'S REVISED COUNTERCLAIM FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING, FRAUD, AND REFORMATION

21

1    12.    For costs of suit and expenses; and

2    13.    For such other and further relief as the Court deems just and proper.

3    Dated:  November 10, 2014        NICOLAIDES FINK THORPE
                                      MICHAELIDES SULLIVAN LLP
4

5                                     By:    _____ /s/ Sara M. Thorpe _____
                                             Sara M. Thorpe
6                                            Gary A. Barrera
                                      Attorneys for Defendant and Counterclaimant
7                                     National Union Fire Insurance Company of
                                      Pittsburgh, PA
8